**Case No. 25-461**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**ZACHERY FULTON AND CONNOR WEST SANTINI,**

Defendants-Appellants

v.

**ANZHELIKA PAYNE, PERSONAL REPRESENTATIVE TO THE ESTATE OF LANDON JAY PAYNE,**

Plaintiff-Appellee

Honorable Michael J. McShane
United States District Judge
Case No. 6:22-cv-00471

---

# DEFENDANTS-APPELLANTS' PETITION FOR REHEARING EN BANC

---

Andrea D. Coit, OSB No. 002640
acoit@eugenelaw.com
Ariana Denley, OSB No. 177314
adenley@eugenelaw.com
Hutchinson Cox
940 Willamette Street, Suite 400
PO Box 10886
Eugene, OR 97440
Telephone:(541) 686-9160

Of Attorneys for Defendants-Appellants

## RULE 40(b)(2) STATEMENT

This appeal involves the denial of qualified immunity to the two Defendants, Deputies Fulton and Santini. The Panel Decision[1] affirmed the district court's decision. A rehearing en banc is necessary in this case because the Panel Decision conflicts with a decision of the United States Supreme Court, the decisions of other circuit courts, and with other decisions of this Court.

Specifically, the Panel Decision conflicts with the decision of the United States Supreme Court in *Zorn v. Linton*, 607 U.S. 568, 146 S. Ct. 926 (2026), and with the decisions of other circuits. *See e.g. Ingram v. Hamilton*, 179 F.4th 251 (4th Cir. 2026), *Baker v. Coborn*, 170 F.4th 988 (5th Cir. 2026), and *Lombardo v. City of St. Louis*, 38 F.4th 684, 692 (8th Cir. 2022). Additionally, the Panel Decision conflicts with the decisions of this Court and, therefore, the full Court's consideration is necessary to maintain uniformity of this Court's decisions. *See e.g. Perez v. City of Fresno*, 98 F.4th 919, 926 (9th Cir. 2024) and *Fuhr v. City of Seattle*, 175 F.4th 1081, 1085 (9th Cir. 2026).

## I. INTRODUCTION

The United States Supreme Court's recent decision in *Zorn* held that "officers receive qualified immunity unless they could have read the relevant precedent

[1] *Payne v. Fulton*, No. 25-461, 2026 U.S. App. LEXIS 29225, at *2 (9th Cir. Sep. 21, 2026). A copy of the decision is attached as Exhibit A.

beforehand and known that it proscribed their specific conduct." *Zorn*, 607 U.S. at 572 (internal quotations and alterations omitted). *Zorn* further held that a prior circuit decision involving a "wide range of aggressive conduct" does not put officers on notice that their more limited conduct was unlawful. *Id.* at 573. According to *Zorn*, unless a circuit court or district court specifically identifies a case where an officer was held to have violated the Constitution by taking similar actions in similar circumstances, the officer is entitled to qualified immunity. *Id.* at 574.

Here, the Panel Decision relied on *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052 (9th Cir. 2003) to provide the requisite notice to Deputies Fulton and Santini of the unconstitutionality of each of their specific actions. It did so without performing the requisite examination of whether the conduct of each Deputy was sufficiently similar to that in *Drummond* to deny that Deputy qualified immunity. *Zorn* requires that examination be undertaken for each defendant, focusing specifically on the actions taken by the individual defendant. Had the Panel Decision undertaken the examination required by *Zorn*, qualified immunity could not have been denied.

## II. STATEMENT OF THE CASE

On March 27, 2020, at the very outset of the COVID-19 pandemic, Landon Payne was delivered to the Lane County Jail by the Eugene Police Department ("EPD"). EPD told Lane County deputies that Payne had been resisting arrest and that

he had to be tased for EPD to gain control of him. Under new COVID-19 protocols, instituted that date, detainees such as Payne could not be taken into the jail until their temperature had been taken. Additionally, Lane County Jail policy in March 2020 required that all combative detainees, which EPD reported Payne to be, had to be placed into leg restraints prior to being booked into the jail.

Along with other deputies, Lane County Sheriff's Deputies Defendants Fulton and Santini assisted in restraining Payne for a period of less than 90 seconds[2] while his temperature was taken and leg restraints were attempted to be applied. The district court denied Deputies Fulton and Santini's request for qualified immunity. Specifically, the district court stated: "This court concludes that *Drummond* and its progeny through September 27, 2020, put Deputies Fulton and Santini on notice that their disputed actions – applying pressure to the back of a handcuffed, prone, agitated individual who was struggling to breathe – was unconstitutional." ER-20.

## III. ARGUMENT

### A. The Panel Opinion Conflicts with *Zorn v. Linton*

The Supreme Court's decision in *Zorn* establishes a demanding, fact-specific standard for determining whether the law is clearly established for purposes of

[2] The district court found that Mr. Payne lost consciousness and was turned over onto his back approximately 90 seconds after he was removed from the EPD police vehicle. That time included time when Mr. Payne was being lowered to the ground and moved into a position where his temperature could be taken and leg restraints could be applied.

qualified immunity. *Zorn*, 607 U.S. 568. Officers are entitled to immunity unless they "could have read the relevant precedent beforehand and known that it proscribed their specific conduct." *Id.* at 572. A prior decision that addresses a broad or general category of force does not satisfy this standard. Where the prior decision involved a "wide range of aggressive conduct," it cannot serve as notice that a more limited, specific application of force was unlawful. *Id.* at 573. Courts must identify a case in which an officer was held to have violated the Constitution "by taking similar actions in similar circumstances." *Id.* at 574.

The Panel Decision's application of *Drummond* fails this standard. The Panel Decision states that:

> [i]n March 2020, Fulton and Santini had "fair warning" that officers may not "crush[]" Landon Payne ("Landon") against the ground by pressing their weight on his neck and torso, and continuing to do so despite his repeated cries for air, and despite the fact that his hands were cuffed behind his back and he was offering no resistance.

*Payne* at *2, *citing Drummond* at 1061 (9th Cir. 2003).

In reaching that conclusion, the Panel Decision did not examine whether *Drummond*'s specific factual circumstances were sufficiently similar to the allegations here such that *Drummond* gave Deputies Fulton and Santini requisite notice. Had it conducted the required examination, the Panel Decision would have noted that there were no allegations (or evidence) in the case that either Deputy placed weight or pressure on Payne's neck. It would have noted that there were no allegations (or

evidence) that Payne made repeated cries for air. And it would have noted that, unlike *Drummond*, Payne actively resisted placement of the leg shackles during the entirety of his restraint.

*Drummond* is undeniably a case of egregious conduct. Among other things, one officer sat on Drummond's mid-line, upper-back (over his lungs) while another officer knelt on his neck for no less than 20 minutes while Drummond repeatedly gasped and pleaded for breath. *Drummond* goes far beyond anything alleged by Payne to have occurred in this case. Despite this, the Panel Decision states:

> If Payne proves her version of events at trial, a reasonable jury could also find that the force used against Landon was "objectively [un]reasonable," and thus "unconstitutionally excessive." *Lombardo v. City of St. Louis,* 594 U.S. 464, 466– 67 (2021) (per curiam) (citation modified). Fulton and Santini "continued to press their weight on [Landon's] neck and torso as he lay handcuffed on the ground and begged for air." *Drummond,* 343 F.3d at 1056.

Payne at *2.

The record simply does not support the Panel Decision's referenced comparison to *Drummond*. The Deputies' entire encounter with Payne is captured on video. Neither Deputy came into contact with Payne's neck, thus that alleged material similarity with *Drummond* will not exist even if "Payne proves her version of events at trial." Further, again unlike *Drummond*, at no time during the 90-second use of force did Payne lie still. The video evidence shows him continuing to struggle against

the attempted placement of leg restraints until the moment he lost consciousness. And finally, there are no allegations, and there will be no proof at trial, that Payne made repeated cries for air, ignored by the Defendants. The one possible statement Payne made that he could not breathe is barely discernable on the body cam audio and no evidence in the record suggests either Deputy Fulton or Santini heard the single statement.

Under *Zorn*, the relevant question is not whether a prior case addressed the general subject of prone restraint or back pressure. The question is whether the prior case addressed the specific configuration of force allegedly used here – including Deputy Santini's application of pressure to Payne's right arm or right flank for 18 seconds and Deputy Fulton's use of his knee to restrain Payne's right shoulder and holding Payne's head still for approximately a minute – with enough specificity that every reasonable officer would have understood those precise actions to be unconstitutional. The Panel Decision's analysis does not answer that question.

### B. The Panel Decision Conflicts with Decisions of Other Circuits

Multiple circuits, both before and after *Zorn*, have required courts to conduct the granular, fact-specific comparison that the Panel Decision bypassed here.

In *Ingram v. Hamilton*, 179 F.4th 251 (4th Cir. 2026), the Fourth Circuit held that a prior case must define the right at issue with a high degree of specificity, and that the prior case must have addressed conduct closely analogous to the conduct at

issue – not merely the same general category of force. A general prohibition on unreasonable force does not satisfy the clearly-established-law requirement; the court must identify a case that would have put a reasonable officer on notice that the specific conduct in the specific circumstances was unlawful.

In *Baker v. Coborn*, 170 F.4th 988 (5th Cir. 2026), the Fifth Circuit, applying *Zorn*, required identification of a prior case in which an officer in similar circumstances was held to have violated the Constitution, and only found reliance on a prior case appropriate where the officer's specific conduct at issue was more severe than the conduct at issue in the prior case. The Fifth Circuit emphasized that in analyzing the prior case, it was required to "employ[] the necessary granularity" required for qualified immunity analysis to analyze whether the factual similarities between the two cases clearly established the officer's conduct as unconstitutional. *Id.* at 994.

Even before the *Zorn* opinion was issued, the Eighth Circuit had held that cases with "significant distinctions from the facts at issue here . . . cannot serve as a robust consensus of persuasive authority" to deny qualified immunity. *Lombardo v. City of St. Louis*, 38 F.4th 684, 692 (8th Cir. 2022).

As the dissent to the Panel Decision stated, *Drummond* "is factually distinguishable, involved more egregious conduct, and did not give the Deputies fair

warning that their particular use of force was unconstitutionally excessive." *Payne* at *6, Fitzwater, District Judge, dissenting.

The Panel Decision's reliance on *Drummond* as a general proposition that pressure applied to any portion of the upper body while the detainee is handcuffed is excessive, and without performing the case-specific comparative analysis these circuits require, places the Ninth Circuit in direct conflict with the Fourth, Fifth, and Sixth Circuits on the application of *Zorn*'s "clearly-established-law" standard. The result is a circuit split on a question that arises in qualified immunity litigation throughout the country. Prone restraint is a common and necessary action taken by officers across the country on a daily basis. En banc rehearing is necessary to align this Court's approach to the analysis of qualified immunity in cases involving prone restraint with the uniform standard the Supreme Court prescribed in *Zorn*.

### C. The Panel Decision Conflicts with Prior Decisions of this Court

The Panel Decision is also inconsistent with prior published decisions of this Court that require a fact-specific comparison before a prior case may serve as clearly established authority.

In *Perez v. City of Fresno*, 98 F.4th 919, 926 (9th Cir. 2024), this Court held that even where the facts of a case are "disturbingly similar" to those present in *Drummond*, where there are material factual differences, *Drummond* did not "clearly establish the unconstitutionality of the officers' conduct." Just like *Zorn* now

explicitly requires, the *Perez* court held that "[g]iven the specific context" of that case, *Drummond* did not put the officers on fair notice that their specific actions in their specific circumstances were unlawful. *Id.*

In light of *Zorn*, this Court has reiterated that in denying qualified immunity, the Court must find precedent that encompasses the specific conduct at issue. *See Fuhr v. City of Seattle*, 175 F.4th 1081, 1085 (9th Cir. 2026). When the *Fuhr* court could not find precedent of an officer using lethal force against a noncompliant suspect holding a child hostage, it granted the officer qualified immunity. *Id.* at 1085-86. In doing so, this Court analyzed prior case law and distinguished the facts present in *Fuhr* from those present in prior cases where an officer had similarly not given a final warning or brandished a weapon. *Id.* Although the officer in *Fuhr* shot without giving a final warning and Fuhr was not brandishing a weapon, the facts of the case were distinguishable enough from those prior cases that the officer was entitled to qualified immunity. *Id.*

## IV. CONCLUSION

The Panel's Memorandum disposition in this case does not engage in analysis required by *Zorn* and this Court's precedent. It cites *Drummond*, incorporates that case's descriptive language, and affirms the denial of qualified immunity without conducting the comparative factual analysis that is required.

For the foregoing reasons, Defendants-Appellants Deputies Zachery Fulton and Connor Santini respectfully request that this Court grant rehearing en banc, vacate the Panel's Memorandum disposition, and reverse the denial of qualified immunity.

Respectfully submitted this 5th day of October, 2026.

HUTCHINSON COX

By: s/Ariana Denley

Ariana Denley, OSB No. 177314
adenley@eugenelaw.com
Andrea D. Coit, OSB No. 002640
acoit@eugenelaw.com
Of Attorneys for Defendants-Appellants

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Circuit Rule 40-1, the foregoing **DEFENDANTS-APPELLANTS' PETITION FOR REHEARING EN BANC** is in compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

DATED this 5th day of October, 2026.

HUTCHINSON COX

By: s/Ariana Denley
Ariana Denley, OSB No. 177314
adenley@eugenelaw.com
Andrea D. Coit, OSB No. 002640
acoit@eugenelaw.com
Of Attorneys for Defendants-Appellants

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing **DEFENDANTS-APPELLANTS' PETITION FOR REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

HUTCHINSON COX

By: s/Ariana Denley
Ariana Denley, OSB No. 177314
adenley@eugenelaw.com
Andrea D. Coit, OSB No. 002640
acoit@eugenelaw.com
Of Attorneys for Defendants-Appellants

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 21 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ANZHELIKA PAYNE, personal representative to the estate of Landon Jay Payne,

Plaintiff - Appellee,

v.

ZACHERY FULTON, an individual; CONNOR WEST SANTINI, an individual,

Defendants - Appellants,

and

CITY OF EUGENE, a municipal corporation, COUNTY OF LANE, JAIRO SOLORIO, an individual, ANDREW ROBERTS, an individual, JACOB THOMAS, an individual, ROBERT GRIESEL, an individual, JUSTIN WILSON, an individual, COLTER GAWITH, an individual, NATHAN GENT, an individual, MICHAEL BAEUERLEN, an individual, STEPHEN FOLEY, an individual, JOSEPH FISHER, an individual, JEREMY FIFER, an individual, WILLIAM MCCLURE, an individual, LANCE JESTER, an individual, EMMA

No. 25-461

D.C. No. 6:22-cv-00471-MC

MEMORANDUM*

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| |
|---|
| GROTEFEND, an individual also known as Emma Edwards, RICHARD CLINTON RILEY, an individual,<br><br>Defendants. |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, Chief District Judge, Presiding

Argued and Submitted December 3, 2025
Submission Vacated May 4, 2026
Resubmitted September 17, 2026
Portland, Oregon

Before: McKEOWN and SUNG, Circuit Judges, and FITZWATER, District Judge;[**]
Dissent by Judge Fitzwater.

Deputies Zachery Fulton ("Fulton") and Connor Santini ("Santini") appeal the district court's denial of summary judgment on Anzhelika Payne's ("Payne") Section 1983 claim. The parties are familiar with the facts, and we do not recite them here. We have limited jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. *See Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014).

Reviewing de novo "abstract issues of law," *Johnson v. Jones*, 515 U.S. 304, 317 (1995), and "view[ing] the facts in the light most favorable to" Payne as the nonmovant, *Plumhoff*, 572 U.S. at 768, we affirm. In March 2020, Fulton and

[**] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

Santini had "fair warning" that officers may not "crush[]" Landon Payne ("Landon") "against the ground by pressing their weight on his neck and torso, and continuing to do so despite his repeated cries for air, and despite the fact that his hands were cuffed behind his back and he was offering no resistance." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1061 (9th Cir. 2003). We so conclude based on Payne's allegations and without "weighing the evidence" or "importing genuinely disputed factual propositions." *Tolan v. Cotton*, 572 U.S. 650, 657, 660 (2014) (per curiam) (citation modified).

If Payne proves her version of events at trial, a reasonable jury could also find that the force used against Landon was "objectively [un]reasonable," and thus "unconstitutionally excessive." *Lombardo v. City of St. Louis*, 594 U.S. 464, 466–67 (2021) (per curiam) (citation modified). Fulton and Santini "continued to press their weight on [Landon's] neck and torso as he lay handcuffed on the ground and begged for air." *Drummond*, 343 F.3d at 1056. Payne's minor offenses, handcuffs, prone position, and the numerous officers surrounding him would permit a jury to find that he "posed only a minimal threat to anyone's safety," *id.* at 1057–58, and that only a "minimal amount" of force was warranted, *id.* at 1059. While Landon may have posed a minor threat to the officers because he was incoherent and agitated, he "was also considerably outnumbered, which counts against a finding that [he] posed a threat to the [twelve] officers at the scene."

*Green v. City & Cnty. of S.F.*, 751 F.3d 1039, 1050 (9th Cir. 2014). Finally, "the governmental interest in using [bodyweight compression] force [was] diminished by the fact that" Fulton and Santini were "confronted, not with a person who has committed a serious crime against others, but with a mentally [disturbed] individual." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

Several of Fulton and Santini's arguments ask of us to do what our review in this posture forbids—assess whether "the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 320. The district court identified genuine disputes about "the precise location, duration, and quantum of force" that each deputy applied, and whether Landon actively resisted or instead struggled to breathe. We "lack jurisdiction" to revisit those disputes, *Sanderlin v. Dwyer*, 116 F.4th 905, 910 (9th Cir. 2024), unless they are "blatantly contradicted by the record," *Scott v. Harris*, 550 U.S. 372, 380 (2007). In this case, "[t]he mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from [it]." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018).

We need not decide whether the Fourth or the Fourteenth Amendment applies to the facts surrounding the incident that led to Landon's death.[1] For

[1] We reject Fulton and Santini's argument, raised for the first time on reply, that the "shocks the conscience" standard applies in this context because Landon died "outside the context of a seizure." That argument is not only forfeited, *Grabowski*

wherever he was along the "custodial continuum," *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996), and whatever "the source of law" that protected his interests, we are required to "determine whether the force was objectively unreasonable in light of the 'facts and circumstances of [this] particular case.'" *Lombardo*, 594 U.S. at 466 n.2 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). In light of that requirement and the limited scope of our review, we affirm.

**AFFIRMED.**

---

*v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1122 n.6 (9th Cir. 2023), but also incorrect. Even assuming that the arrest was over, Fulton and Santini "terminated or restrained" Landon's "freedom of movement through means intentionally applied" and thus effected a Fourth Amendment seizure. *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (citation modified).

FILED

SEP 21 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Payne v. Fulton*, No. 25-461

FITZWATER, District Judge, dissenting:

I respectfully dissent from the majority's decision to affirm the district court's denial of qualified immunity for Deputies Fulton and Santini.

Based on my study of the record, including the bodycam video and the sally port video, *see Scott v. Harris*, 550 U.S. 372, 380-81 (2007), I would hold that Plaintiffs-Appellees failed to demonstrate that every reasonable law enforcement officer in these officers' positions would have known that using the force they employed against Landon Payne under these circumstances violated the Constitution.

I would also hold that *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), is factually distinguishable, involved more egregious conduct, and did not give the deputies fair warning that their particular use of force was unconstitutionally excessive.

Because this memorandum disposition is unpublished, I see no compelling reason to write a lengthier dissent. But the brevity of my comments should not camouflage what a more detailed dissent hopefully would demonstrate: that Deputies Fulton and Santini were entitled to qualified immunity, and that the district court erred when it failed to reach this conclusion based on the summary judgment record.